# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-40633

JOHN QUINN

Plaintiff-Appellant

v.

JOHN ROACH, individually and in his official capacity as Collin Co District Attorney; GAIL LEYKO, individually and in official capacity as Collin Co Assistant District Attorney; MANUEL GONZALES, individually and in official capacity as Collin Co Assistant District Attorney; CURTIS HOWARD, individually and in official capacity as Collin Co Assistant District Attorney; KRISTI TYLER, individually and in official capacity as Collin Co Assistant District Attorney; MICHELLE VOIRIN, individually and in official capacity as Collin Co Assistant District Attorney; JOSE QUILES, individually and in official capacity as McKinney Texas police officer; JOHN DOES, 1-5 Defendants, individually and in their official capacity as McKinney Texas police officers; LAURIE HOUSTON; KATIE QUINN; COLLIN COUNTY TEXAS; CITY OF MCKINNEY

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CV-120

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:[*]

This civil suit stems from the arrest of the plaintiff-appellant, John Quinn ("Quinn"), for the alleged sexual assault of his daughter, Katie Quinn, when she was a young child, and the subsequent fifteen-month delay in the presentation of his criminal case to the grand jury. Quinn filed suit against Collin County, Texas; the Collin County District Attorney and a number of assistant district attorneys (together, "the District Attorney Defendants"); the City of McKinney, Texas; and the city police officer who secured the arrest warrant, Detective Jose Quiles.[1]

The claims in this case can be divided into two groups: (1) those dealing with the initial arrest; and (2) those dealing with the subsequent fifteen-month delay in the presentation of the case to the grand jury. Quinn's claims against Detective Quiles and the City (together, the "City Defendants") relate to the procurement of the arrest warrant. Quinn sued Quiles and the City under 42 U.S.C. § 1983 for violating Quinn's right to be free from unreasonable seizures under the Fourth Amendment and right to due process and equal protection under the Fifth and Fourteenth Amendments, for malicious prosecution under state and federal law, and for false arrest and imprisonment and various forms of negligence under state law. Quinn's claims against Collin County, the Collin County District Attorney, and the assistant district attorneys (together, "the County Defendants") relate to the fifteen-month delay in the presentation of his case to the grand jury. Quinn sued the County Defendants under § 1983 for violating his right to a speedy trial under the Sixth Amendment and his right to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Quinn also filed suit against his ex-wife, Laurie Houston, and Katie Quinn. Those claims are not at issue in this appeal.

due process under the Fifth and Fourteenth Amendments, and for negligence under state law. Quinn sought money damages against all of the defendants-appellees, as well as injunctive relief against the County Defendants.

Both the County Defendants and the City Defendants filed motions to dismiss all claims under Fed. R. Civ. P. 12(b)(6), and Detective Quiles also filed a motion for summary judgment on all claims against him. With regard to Quinn's claims relating to the procurement of the arrest warrant, the district court held: (1) that he had failed to state an equal protection claim because he was not a member of a protected class; (2) that he had failed to state a claim for malicious prosecution under federal law because no such freestanding claim exists; (3) that any federal-law claims against Quiles in his official capacity were duplicative of the federal-law claims against the City and should therefore be dismissed; (4) that Quinn had failed to state a claim against Quiles in his official capacity under state law because any such claims were barred by sovereign immunity; (5) that he had failed to state a claim against the City for negligence because such a claim was barred by sovereign immunity; (6) that Quiles was entitled to summary judgment on the issue of qualified immunity from Quinn's claims under § 1983 on the grounds that Quiles's determination of probable cause was objectively reasonable and Quinn was not deprived of any procedural due process rights; and (7) that Quiles was entitled to summary judgment on the issue of official immunity from Quinn's state-law claims because Quiles's actions in procuring the arrest warrant were discretionary, made in good faith, and made within the scope of his authority.

The district court dismissed all of Quinn's claims relating to the fifteen-month delay in the presentation of his case to the grand jury, holding: (1) that the delay did not violate any of Quinn's constitutional rights; (2) that the District Attorney Defendants were protected by qualified immunity and prosecutorial immunity from being sued in their individual capacities, and by Eleventh

Amendment immunity from being sued in their official capacities, for their actions in handling the criminal case against Quinn; (3) that Quinn had failed to allege the existence of an "official policy" that could subject the County to liability under § 1983; and (4) that Quinn lacked standing to seek injunctive relief because he had failed to allege a likelihood of a future violation of his rights.

Quinn appeals the district court's holdings that Quiles enjoyed qualified and official immunity; that there is no federal cause of action for malicious prosecution; that the City enjoyed sovereign immunity; that the fifteen-month delay did not violate Quinn's constitutional rights; that the District Attorney Defendants enjoyed qualified, prosecutorial, and Eleventh Amendment immunity; and that Quinn did not have standing to pursue injunctive relief.

For the reasons stated below, we AFFIRM.

## I.    Background

Quinn and his former wife, Laurie Houston, divorced in 1991. Quinn was awarded custody of their two children, but one of them, Quinn's daughter Katie, went to live with Houston at some point. On July 15, 2004, Katie, who was sixteen at the time, told her mother that Quinn had been sexually abusing her since she was eight years old. Earlier that day, Katie had been arrested for shoplifting, and Katie and her mother were discussing Katie's arrest when Katie stated that she had been abused by Quinn. During that conversation, Katie attempted suicide, and she was taken to the hospital. At the hospital, Joy Turner, a nurse, performed an admission assessment on Katie. During the assessment, Katie stated that Quinn had sexually abused her beginning when she was eight years old and ending when she was twelve. Turner reported the allegations of abuse to the Texas Department of Family and Protective Services, Child Protective Services Division ("CPS"). On July 21, 2004, Dawn Todd of the Denton County Children's Advocacy Center conducted a videotaped interview

with Katie. In the interview, Katie stated that her father had engaged in sexual intercourse with her on two separate occasions, once when she was eight years old and once when she was nine or ten years old.

On July 30, 2004, Detective Quiles received a written notification of the alleged abuse from CPS (the "CPS intake report") and a copy of the videotaped interview conducted by Todd. Quiles viewed the videotape of the interview on August 9, 2004. On August 12, Laurie Houston met with Quiles and provided Quiles with a written statement regarding the events of July 15, 2004, including Katie's claim that Quinn had been sexually abusing her since she was eight years old. Houston also stated that Quinn was an alcoholic and a flight and suicide risk. On the same date, Quiles asked Houston to provide him with a copy of Katie's medical records. On August 31, 2004, Beth Hudson, a registered nurse, performed a Sexual Assault Nurse Examiner ("SANE") examination on Katie. On September 2, 2004, Quiles received an affidavit from Joy Turner, the nurse who had performed the admission assessment on Katie at the hospital, recounting Katie's statements to her that her father had abused her from ages eight to twelve.

Based on the videotaped interview of Katie, Turner's affidavit, Houston's written and oral statements, and the CPS intake report, Quiles executed a probable cause affidavit on September 8, 2004 for Quinn's arrest. The next day, a warrant was issued for Quinn's arrest for the felony criminal offense of aggravated sexual assault of a child. Quinn was arrested by the McKinney Police Department on September 12, 2004. Quiles was not present at the arrest. Quiles was not aware of the results of the SANE examination until after Quinn's arrest. The examination revealed that Katie had a hymen tear, indicating some form of physical trauma. The report did not indicate the cause of the tear or when it had occurred.

Quinn filed a writ of habeas corpus in state court seeking release from bail because of delay, and on January 6, 2006 a state district court judge granted the writ and issued an order of dismissal. The matter was then presented to the Collin County Grand Jury, which no billed Quinn on January 10, 2006.

## II. Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *See XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.*, 513 F.3d 146, 149 (5th Cir. 2008); *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

This court also reviews de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff," *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Dismissal is appropriate when the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555, 570 (2007).

## III. Claims Relating to Quinn's Arrest

### A. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims: first, a court must

6

decide whether the facts alleged or shown are sufficient to make out a violation of a constitutional right; second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201. If the official's conduct violated a clearly established constitutional right, then qualified immunity is not applicable. Prior to *Saucier*, the Court had merely suggested that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). *Saucier* made clear that these two steps were sequential and that a court may not skip the first step and proceed directly to the second step. *See Saucier*, 533 U.S. at 201. In a very recent decision, the Court rejected the rigid sequential approach set out in *Saucier*. In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

Quinn contends that the district court did not apply the correct legal standard for qualified immunity in this case because the district court inquired into the objective reasonableness of Quiles's actions. This argument is wholly without merit, as "[t]he relevant, dispositive inquiry in determining whether a right is clearly established [under the second step of the qualified immunity inquiry] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[2] *Saucier*, 533 U.S. at 202.

_____

[2] This circuit has at times characterized its approach in qualified immunity cases as a three-pronged inquiry in which the traditional second prong is divided into two separate and distinct inquiries: whether the right was clearly established and whether an officer's conduct

The district court held that Quinn had adequately alleged a violation of his Fourth, Fifth, and Fourteenth Amendment rights, but that Quiles's belief that his conduct in procuring the warrant was lawful was objectively reasonable. The issue is whether the district court was correct that Quinn failed to raise a fact issue as to the objective reasonableness of Quiles's belief that his conduct was lawful. In the qualified immunity context, the objective reasonableness of an officer's belief that his conduct was lawful is a question of law, not fact. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005).

Quinn argues that Quiles's procurement of the arrest warrant violated clearly established law that making an arrest without probable cause violates the Fourth Amendment and that engaging in judicial deception when applying for a warrant violates the Fifth and Fourteenth Amendments. In other words, Quinn contends that it would be clear to a reasonable officer that swearing out a probable cause affidavit based on the evidence available in this case on September 8, 2004, and providing the supporting evidence to the magistrate that was in fact provided by Quiles, violated Quinn's right under the Fourth Amendment to be free from arrest in the absence of probable cause and his right under the Fifth and Fourteenth Amendments to be free from the use of judicial deception in the procurement of warrants.

---

was objectively reasonable. *See, e.g., Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998) ("The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."); *Brown v. Bryan County, Okl.*, 67 F.3d 1174, 1181 (5th Cir. 1995) ("A proper analysis of a qualified immunity defense requires us to conduct a two (sometimes three) prong inquiry."), *vacated on other grounds*, 520 U.S. 397 (1997). The Supreme Court's recent case law makes it clear that these inquiries are more appropriately viewed not as separate and distinct, but as two sides of the same analytical coin. *See Pearson*, 129 S. Ct. at 818; *Saucier*, 533 U.S. at 202; *see also Conroe Creosoting Co. v. Montgomery County, Tex.*, 249 F.3d 337, 340 (5th Cir. 2001) ("Second, we determine whether the constitutional right was clearly established at the time the defendant acted. A constitutional right is 'clearly established' if 'the unlawfulness of the conduct would be apparent to a reasonably competent official.'").

The Fourth Amendment requires that an officer have probable cause for an arrest. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (citation and internal quotation marks omitted). A police officer is entitled to qualified immunity for an arrest if a reasonable person in the officer's position could have believed he had probable cause to arrest. *Id.* The district court held that a reasonable officer could have concluded that there was probable cause at the time that Quiles executed the probable cause affidavit based on the videotaped interview of Katie, Turner's affidavit, Houston's written and oral statements, and the CPS intake report. Quinn argues that a reasonable officer could not have concluded that there was probable cause based on the available evidence because the evidence cited by Quiles and the district court consisted solely of Katie's uncorroborated allegations of abuse; the allegations differed in detail when they were made to different individuals; the allegations were made by a teenager of unknown reliability during a time of great stress; Quiles did not attempt to get Quinn's side of the story; and Quiles never talked directly to Katie about the allegations.[3]

---

[3] Quinn heavily relies on an affidavit from a purported police procedures expert stating that the available evidence was insufficient to give an objectively reasonable officer the level of proof necessary to conclude that Quinn had committed a crime. Quinn asserts that this affidavit is sufficient to raise a fact issue as to objective reasonableness. However, as noted by the district court, "this court has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005) (citations omitted). Quinn also asserts that Quiles himself conceded in his deposition that Quiles only had reasonable suspicion that Quinn had sexually assaulted his daughter, not probable cause, and that this is sufficient to raise a fact issue as to objective reasonableness. However, Quiles's statement in his deposition that he had reasonable suspicion referred to the period immediately after he first reviewed the CPS intake report, before he had reviewed the videotaped interview of Katie and received Turner's affidavit and Laurie Houston's written and oral statements. Quiles has consistently stated that he believed that he had probable cause at the time he executed the

Although the facts known to Quiles at the time of the arrest did raise some questions about the Katie's reliability, which Quiles did not pursue, these questions were not so significant as to have made it objectively unreasonable for Quiles to have believed that probable cause existed in light of the detailed nature of Katie's allegations and the fact that Quiles did not possess evidence at the time that Katie may have had a motive to fabricate the allegations. *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."); *United States v. Phillips*, 727 F.2d 392, 399 (5th Cir. 1984) (holding that detailed nature of informant's statement could compensate for uncertainty regarding the informant's veracity). The inconsistencies in Katie's descriptions of the timing of the abuse are relatively minor; her attempted suicide is not necessarily indicative of a lack of reliability, and may in fact be viewed as supporting her allegations of abuse; and shoplifting is a relatively minor crime that does not provide particularly strong evidence that a person is generally untrustworthy. Katie's vested interest in the child support dispute between Quinn and Laurie Houston raises a more serious question about her reliability, but there is no evidence that Quiles was aware of the dispute at the time of the arrest. There is no evidence that Quinn disregarded any exculpatory evidence at the time of the arrest. *See Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) ("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."); *see also Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)) ("[W]hile

---

probable cause affidavit.

law enforcement personnel 'may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'"). Further investigation into Katie's reliability may have been advisable as a matter of good police practices, but it was not objectively unreasonable to believe that probable cause existed even in the presence of some questions about Katie's reliability.[4]

Quinn argues that this case is similar to *Ripson v. Alles*, 21 F.3d 805 (8th Cir. 1994), in which the court held that a police officer was not entitled to qualified immunity for his arrest of a parent who had allegedly sexually abused his two-year-old daughter. In *Ripson*, the officer arrested the child's father based on statements by the child's mother that the child had signs of redness in her genital area after visiting her father and claimed that her father had touched her inappropriately, as well as a statement by the mother's live-in boyfriend corroborating the mother's statement that the child claimed that her father had touched her inappropriately. *Id.* at 808. It was undisputed that, at the time of the arrest, the officer knew that there was no medical evidence of abuse and that the child's parents were involved in a custody dispute over the child. *Id.* The county attorney had also advised the officer to "keep investigating." *Id.* The court held that "[b]ased on all of the facts and circumstances within [the officer's] knowledge and of which he had reasonably trustworthy information at the time of the arrest, a reasonable officer could not

---

[4] Quiles asserts that he did not interview Quinn because Laurie Houston had informed him that Quinn was an alcoholic and a flight or suicide risk, and that he did not interview Katie because he was concerned about causing her additional trauma. We do not find these explanations to be particularly satisfying, as they appear to be based on largely unsupported speculation, and there were presumably ways of interviewing Quinn and Katie while being sensitive to these concerns. However, we do not believe that it was objectively unreasonable to believe that probable cause existed without interviewing Quiles and Houston, regardless of the reason that Quiles did not interview them.

11

have believed probable cause existed for the arrest of [the father] for sexually abusing his daughter." *Id.*

Quinn contends that this case is similar to *Ripson* in that there was no physical evidence of abuse or other evidence to corroborate the allegation of abuse, and asserts that the case for probable cause was actually stronger in *Ripson* because the allegations in that case were made contemporaneously with the abuse. There are clearly some factual similarities between this case and *Ripson*, but *Ripson* is distinguishable on a number of different grounds. First, the lack of corroborating physical evidence in this case is not as suspicious because the alleged abuse occurred a number of years prior to the investigation and Katie had been sexually active since the alleged abuse. Second, the allegations of abuse in this case were made by the alleged victim herself, not simply by her mother. Third, there is no evidence that Quiles was aware of the legal dispute between Quinn and Laurie Houston over child support, whereas in *Ripson* the officer was aware of the custody dispute. Considered as a whole, the facts in *Ripson* that tended to cast doubt on the veracity of the allegations of abuse and that were known to the officer at the time of the arrest appear more significant than those known to Quiles.

Quinn also argues that Quiles's belief that he fully disclosed all relevant facts and did not withhold exculpatory evidence from the magistrate judge that issued the warrant was not objectively reasonable. Quiles testified that he submitted all of the evidence that he had collected in this case to the magistrate judge. Quinn has failed to present any competent summary judgment evidence that Quiles withheld relevant evidence from the magistrate judge; Quinn simply speculates that Quiles was aware of various facts bearing on Katie's credibility, including that she was seeing a psychiatrist and had attempted suicide on numerous occasions, because Laurie Houston was aware of them and she had been interviewed by Quiles. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.

12

1994) (stating that unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence). Based on the record evidence, Quiles's belief that he fully disclosed all relevant facts and did not withhold exculpatory evidence from the magistrate judge was objectively reasonable.[5]

We agree with the district court that Quinn failed to raise a fact issue as to the objective reasonableness of Quiles's belief that his conduct was lawful.

## B.    Official Immunity

Under Texas law, official immunity protects individual public officials from suit arising from performance of (1) discretionary duties (2) in good faith (3) within the scope of their authority. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422 (Tex. 2004) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). Quinn concedes that Quiles was acting within the scope of his authority as a McKinney police officer when he applied for the arrest warrant, but argues that Quiles was not engaged in a discretionary function and that Quinn has raised a fact issue as to whether Quiles acted in good faith.

"If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *Chambers*, 883 S.W.2d at 654. "Ministerial acts are those for which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Ballantyne*, 144 S.W.3d at 425 (citation and internal quotations omitted). The Texas Supreme Court has held that the actions of a police officer during a high-speed chase are discretionary because "[t]he decision to pursue a particular suspect will fundamentally involve the

---

[5] For the same reasons discussed above, Quiles did not violate Quinn's clearly established substantive due process rights. *See Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (stating that conduct must be "conscience shocking" to violate substantive due process).

officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit," and that "[b]eyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a number of levels, including, which route should be followed, at what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued." *Chambers*, 883 S.W.2d at 655. A number of Texas appellate courts have held that a police officer's investigation of a crime, determination of probable cause, and decision concerning if and when to make an arrest, are discretionary functions. *See, e.g., Kersey v. Wilson*, 69 S.W.3d 794, 799 (Tex. App.–Fort Worth 2002, no pet.); *Davis v. Klevenhagen*, 971 S.W.2d 111, 117–18 (Tex. App.–Houston [14th Dist.] 1998, no pet.); *Zess v. Funke*, 956 S.W.2d 92, 94 (Tex. App.–San Antonio 1997, no writ); *Antu v. Eddy*, 914 S.W.2d 166, 171 (Tex. App.–San Antonio 1995, no writ); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 121 (Tex. App.–Houston [1st Dist.] 1995, no writ); *Chapman v. Gonzalez*, 824 S.W.2d 685, 687 (Tex. App.–Houston [14th Dist.] 1992, writ denied); *Dent v. City of Dallas*, 729 S.W.2d 114, 116 (Tex. App.–Dallas 1986, writ refused n.r.e.). Quiles was clearly performing a discretionary function for the purposes of official immunity under Texas law when he investigated the alleged abuse and executed the probable cause affidavit.[6]

To determine whether a public official acted in good faith, a court should consider whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the

---

[6] Quinn cites *Welch v. Milton*, 185 S.W.3d 586 (Tex. App.–Dallas 2006, pet. denied) for the proposition that, the immunity context, "[d]iscretionary acts are those related to determining what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies or exercise of 'professional' or 'occupational' discretion." *Id.* at 597 (citation and internal quotation marks omitted). That proposition is plainly at odds with the rule announced by the Texas Supreme Court that, in the official immunity context, discretionary actions are those that involve personal deliberation, decision and judgment. *See Chambers*, 883 S.W.2d at 654.

information he possessed when the conduct occurred. *See Ballantyne*, 144 S.W.3d at 426. This test is derived substantially from the federal qualified immunity test. For the same reasons that we hold that Quiles held an objectively reasonable belief that his conduct was lawful, we hold that Quiles acted in good faith for the purposes of the official immunity inquiry.

We agree with the district court that Quiles was protected by official immunity.

### C. Malicious Prosecution

Quinn asserts that the district court erred in holding that there is no freestanding federal cause of action for malicious prosecution. The district court's holding is clearly supported by this court's decision in *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (holding that "no such freestanding constitutional right to be free from malicious prosecution exists").

### D. Sovereign Immunity

Quinn asserts that the district court erred in holding that Quinn had failed to state a claim against the City for negligence because such a claim was barred by sovereign immunity. Under Texas law, the City of McKinney, as a unit of state government, is immune from suit and liability except to the extent that there is a waiver of immunity. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). As the district court held, Quinn's negligence allegations do not fall within the waiver of sovereign immunity for certain tort claims outlined in the Texas Tort Claims Act. *See Perez v. City of Dallas*, 180 S.W.3d 906, 910 (Tex. App.–Dallas 2005, no pet.) (citing Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.022).

## IV. Claims Relating to the Fifteen-Month Delay

### A. Whether the Delay Violated Quinn's Constitutional Rights

Quinn asserts that the district court erred in holding that the fifteen-month delay did not violate his right to a speedy trial under the Sixth

Amendment or his right to due process under the Fifth and Fourteenth Amendments.

### 1.    *Speedy Trial Claim*

The district court held that the fifteen-month delay did not violate Quinn's right to a speedy trial under the Sixth Amendment on the grounds that pre-indictment delay does not give rise to a speedy trial claim. Quinn asserts that this was error because the protection afforded by the Sixth Amendment attaches upon arrest, not only indictment.

The Sixth Amendment protects the right of "the accused . . . to a speedy and public trial." U.S. Const. amend. VI. This protection "attaches at the time of arrest or indictment, whichever comes first." *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993); *see also United States v. MacDonald*, 456 U.S. 1, 7 (1982) (citing *Dillingham v. United States*, 423 U.S. 64 (1975)) ("[T]he period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim."). Speedy-trial claims are evaluated using a two-step process. At the first step, a court examines the length of the delay, which is "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "A delay of less than one year will rarely qualify as 'presumptively prejudicial' for purposes of triggering the *Barker* inquiry." *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994). If the delay raises a presumption of prejudice, a court moves to the second step, at which "the length of the delay, the reason for the delay, and defendant's diligence in asserting his or her rights is weighed against the prejudice to the defendant." *United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002).

The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of any criminal charges. *See United States v. MacDonald*, 435 U.S. 850, 861 n.7 (1978) (citing *Strunk v. United States*, 412 U.S. 434 (1973))

16

("[T]his Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated."). Here, because Quinn was never indicted, this court lacks the ability to grant any relief for the alleged Sixth Amendment violation. Quinn therefore lacks standing to assert his Sixth Amendment claim.[7] *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (stating that constitutional standing requires that the alleged injury be redressable by the courts, and that in order to demonstrate redressability, the plaintiff must show a "substantial likelihood that the requested relief will remedy the alleged injury in fact" (citations and internal quotation marks omitted)); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely . . . that the injury will be redressed by a favorable decision." (citations and internal quotation marks omitted)).

The district court properly dismissed Quinn's Sixth Amendment speedy trial claim.

### 2.    *Due Process Claim*

For a preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution, or for some other impermissible, bad faith purpose. *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996) (en banc). To establish prejudice, the defendant must offer more than mere speculation of lost witnesses, faded

---

[7] In any event, although the protection afforded by the Sixth Amendment attaches upon arrest, not only indictment, such that the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim, preindictment delay alone cannot constitute a violation of the Sixth Amendment right to a speedy trial. There can be no violation of the Sixth Amendment right to a speedy trial in the absence of a criminal indictment. *See United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("[N]o Sixth Amendment right to a speedy trial arises until charges are pending."); *see also United States v. Carlock*, 806 F.2d 535, 549 (5th Cir. 1986) ("There is no sixth amendment right to a timely indictment.").

memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources. *United States v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008) (citing *Crouch*, 84 F.3d at 1515). The due process prejudice standard is thus far more stringent than the speedy trial prejudice standard. This Court has underscored the difficulty of meeting this standard, noting that "it is difficult to imagine how a pretrial showing of prejudice would not in almost all cases be to some significant extent speculative and potential rather than actual and substantial." *Crouch*, 84 F.3d at 1516. The burden is on the defendant to prove both prongs of the test. *United States v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004). In this case, Quinn has failed to allege the sort of prejudice required to state a claim for a violation of his due process rights as a result of preindictment delay.

### B.    Qualified Immunity

The district court held that the District Attorney Defendants in their individual capacities were entitled to qualified immunity from Quinn's federal claims on the grounds that Quinn had failed to allege facts that could establish a constitutional violation. As discussed above, we agree with the district court's analysis on this point. The District Attorney Defendants are entitled to qualified immunity with respect to Quinn's federal claims.

### C.    Prosecutorial Immunity

The district court held that any claims against the District Attorney Defendants in their individual capacities for their actions taken in the course of prosecuting Quinn are barred by absolute prosecutorial immunity. Quinn argues that a prosecutor's acts must occur at trial to fall within the ambit of prosecutorial immunity.

Prosecutors are absolutely immune from § 1983 suits in their individual capacities for actions that are within the scope of their prosecutorial duties. *Brooks v. George County, Miss.*, 84 F.3d 157, 168 (5th Cir. 1996) (citing *Imbler*

*v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Prosecutorial immunity has been extended to a prosecutor's actions in initiating, investigating, and pursuing a criminal prosecution. *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984); *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980). The decision to file or not file criminal charges is protected by prosecutorial immunity. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). In this case, Quinn is suing the District Attorney Defendants for waiting fifteen months after he was arrested to seek an indictment. The alleged wrongful act concerns the decision of when and whether to file criminal charges, which clearly falls within the scope of the District Attorney Defendants' prosecutorial duties. *See Oliver*, 904 F.2d at 281; *McGruder*, 733 F.2d at 1148; *Cooke*, 616 F.2d at 793. Quinn's contention that prosecutors are only entitled to prosecutorial immunity when they are engaged in advocacy before a court has been clearly rejected by the Supreme Court. *See Van De Kamp v. Goldstein*, 129 S.Ct. 855, 861–65 (2009) (holding that prosecutorial immunity applied to acts related to establishment of office administrative procedures regarding how and when to make impeachment information available at a trial); *Imbler*, 424 U.S. at 431 n.33 ("We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.").

We agree with the district court that any claims against the District Attorney Defendants in their individual capacities for their actions taken in the course of prosecuting Quinn are barred by absolute prosecutorial immunity

**D.   Eleventh Amendment Immunity**

Quinn argues that the district court erred by finding that the county prosecutors were protected by Eleventh Amendment immunity from being sued in their official capacities for their actions in handling the criminal case against Quinn because they are county, not state, officials. This circuit has stated on

numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities. *See, e.g., Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (holding that a district attorney acted as a state official in using peremptory challenges during jury selection); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) (holding that the actions of a Texas district attorney within the scope of his prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable); *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) (holding that a Texas district attorney is a state official when instituting criminal proceedings to enforce state law); *cf. Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (holding that Texas district attorney acted as county official in setting county policy for the authorization of misdemeanor warrants). The District Attorney Defendants in this case were clearly acting in their capacities as prosecutors in determining whether and when to bring charges against Quinn. *See Echols*, 909 F.2d at 801. The District Attorney Defendants are protected by Eleventh Amendment immunity with respect to their actions in handling the criminal case against Quinn.

### E. Injunctive Relief

Quinn appeals the district court's holding that he lacks standing to seek injunctive relief because he has failed to allege a likelihood of a future violation of his rights. Quinn asserts that he has standing to pursue an injunction against the County Defendants because they have asserted that they are capable of re-urging the child-abuse charges against Quinn at any time through 2015. He also asserts that he has third-party standing in light of the fact that new charges in an unrelated matter were filed against him in August 2006 and the County Defendants may "drag out" the prosecution of that case and cases against other accused persons.

To satisfy the standing requirement, a plaintiff seeking injunctive relief must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct. *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). The injury or threat of injury must be both real and immediate, not merely conjectural or hypothetical. *Id.* at 563 n.23 (citing *Lyons*, 461 U.S. at 102). The mere fact that the County Defendants have stated that they are capable of re-urging the child abuse charges does not constitute a direct threat, let alone an immediate one. *Cf. Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (holding that threats of prosecution were not imaginary or speculative when plaintiff had been twice warned to stop handbilling and was told by the police that if he handbilled again and disobeyed a warning to stop he would likely be prosecuted). Similarly, the asserted threat of Quinn's or another person's case being "dragged out" is vague, speculative, and not necessarily immediate. Quinn does not have standing to seek injunctive relief.

Accordingly, the judgment of the district court is AFFIRMED.