SUTTON, Circuit Judge,
concurring.
I concur in Judge Duggan’s opinion for the Court.
I write separately to add that, whatever else went wrong during Buxton Heyerman’s unduly long incarceration, it was not a violation of the Speedy Trial Clause of the Sixth (and Fourteenth) Amendment. In view of Heyerman’s seventeen-year stay in prison after the state courts reversed his conviction, it is clear that the Michigan criminal-justice system did not operate in a “speedy” manner. A speedy-trial violation, however, requires two things — state lethargy and a state trial. To the extent money damages under § 1983 are available at all for a speedy-trial violation, see Quinn v. Roach, 326 Fed.Appx. 280, 290 (5th Cir.2009), a claimant must show both elements. See Doggett v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (“to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial” has been excessive); United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (speedy trial right “attaches only when a formal criminal charge is instituted and a criminal prosecution begins”); Atkins v. Michigan, 644 F.2d 543, 547 (6th Cir.1981) (rejecting speedy-trial claim because the defendant “has not yet been tried”). Yet Heyerman established just one of the two *650 requirements. Once the State figured out what had happened, it opted — wisely—not to prosecute Heyerman a second time.
It remains intriguing whether the facts of Heyerman’s case might give rise to a § 1983 action premised on a different theory of liability, say an unreasonable detention under the Fourth Amendment or a violation of due process under the Fourteenth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); Gerstein v. Pugh, 420 U.S. 103, 125-26 & nn. 26-27, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). But it is not intriguing whether a decision to release an individual before trial establishes a compensable violation of the Speedy Trial Clause. The Sixth Amendment guarantees speedy trials, not speedy detentions.
Nor, it bears adding, is the State the only one to blame for this remarkable saga. A jury convicted Heyerman in 1988, and the Michigan Court of Appeals reversed his conviction the following year. Oddly enough, his next eight years of unjustified incarceration were by design. As Heyerman acknowledged in his deposition, his attorney and he “developed a strategy of ... sitting tight or staying put” in jail, without requesting a trial, for the first ten years of his confinement, because “there was a statute of limitations that [his attorney] thought would pass in 1997.” R.39^1 at 77-78. The one thing Heyerman did not want after the state courts reversed his first-degree criminal-sexual-conduct conviction was a speedy trial because he thought his “chances of prevailing on a retrial were not real good,” id. at 78, and he was not eager for the courts to impose another 20-to^40-year sentence. What he thus wanted, and what his silence was designed to create, was an unspeedy trial, one that would take ten years to initiate and one that would never happen because the limitations period had run. On this record, whatever else is wrong with the State’s maintenance of its criminal-justice system or its enabling of this litigation strategy, a speedy-trial problem is not part of it.
Even when 1997 rolled around, and the time had come to cash in the chips on this strategy, Heyerman and his lawyer could not bring themselves to do it. Heyerman “asked [his attorney] why we aren’t taking this back to court,” and his attorney “started ... hemming and hawing about the more time the better.” Id. at 79. Heyerman eventually got fed up and stopped speaking with his attorney, who to his discredit apparently abandoned his client. Even then, Heyerman did not demand release or ask the courts for it.
Perhaps not surprisingly, this strategy, if one can call it that, did not work well for Heyerman. But it did not pan out well for his attorney either: a discipline board suspended him from the practice of law for 33 months and he eventually settled a malpractice claim filed by Heyerman for $95,000.
After his attorney transitioned from a do-nothing-with-the-State strategy to a do-nothing-with-the-elient approach, neither Heyerman nor his family nor anyone else acting on his behalf showed diligence in bringing the situation to light. His complaint says only that when appearing before Michigan parole officials during the fourteenth and fifteenth years of his post-reversal confinement — seven to eight years after his litigation strategy demanded action — he told them, “I don’t know how much I can say, I am supposed to have a new trial.” R.l ¶¶ 27-28. While better than saying nothing, that is not a complaint that he was being detained without authorization. Not until Heyerman filed his petition in state court for a writ of habeas corpus did the State realize what had happened.
*651 It is not often that an inmate seeks refuge from the prosecutorial arm of the State by laying low for seventeen years in prison in order to avoid the risk of a new trial that, if all goes badly, will lead to: incarceration. And it is not often that a State abets this strategy by failing to realize that it is housing an individual whose conviction has been reversed. One suspects that Heyerman and his attorney will not try this again, and one hopes that Michigan will not let this happen again. Either way, what has already happened did not violate the speedy-trial guarantee of the Sixth Amendment.