Reginald R. BRINKMANN, Jr.,
Plaintiff-Appellant,

v.

DALLAS COUNTY DEPUTY SHERIFF
ABNER, et al., Defendants-Appellees.

Nos. 86–1326, 86–1458
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 8, 1987.

Reginald R. Brinkmann, Jr., pro se.

Henry J. Voegtle, III, Asst. Dist. Atty., Federal Section, Dallas, Tex., for defendants-appellees.

Before CLARK, Chief Judge, and GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from the district court's disposition of Reginald Brinkmann's 42 U.S.C. § 1983 claims against Dallas County, four of its deputy sheriffs, and Sue O'Hara, a counselor in the Family Court Services Department. The district court granted O'Hara's motion for summary judgment, and subsequently dismissed with prejudice Brinkmann's complaint against the other defendants because of his refusal to obey a court order. We affirm.

### Facts and Proceedings Below

Reginald Brinkmann and his wife were divorced in Dallas in 1982. The couple had one child, a son, and under the initial custody arrangement the parents had custody of him on different days of the week. This proved unsatisfactory and on September 21, 1983, the state court gave custody of the child to his maternal uncle and aunt, Mr. and Mrs. L. Dale Berthelot, who live in Baton Rouge. The circumstances leading to and surrounding the award of custody to the Berthelots gave rise to Brinkmann's present lawsuit.

Defendant Sue O'Hara was a Dallas County Family Court Services officer. At the direction of the state district court, she prepared family studies analyzing in particular divorce cases the various custody award options available to the court and recommending what she considered to be the best arrangement for the child. At the direction of the master of the state district court, O'Hara conducted such a study in the Brinkmann divorce case and suggested that the child's best interests would be

served if the court placed him in the custody of the Berthelots. The court followed that recommendation.

In the present action, commenced April 4, 1985, Brinkmann asserted that O'Hara had conducted a secret meeting with the Berthelots and conspired to deprive him of "his Civil Rights with regard to his son"; that her social study report was false; that O'Hara had provided legal advice to the Berthelots in an October 3, 1983, letter; and that she furnished the Louisiana family court in Baton Rouge with "legal records that she knew were illegal and violated Texas laws."

In the meantime, prior to the ultimate decision that the child should reside with his uncle and aunt, the custody arrangement between Reginald Brinkmann and his wife was not going well. Brinkmann had custody during the week, but was supposed to surrender the child to his ex-wife on the weekends. This he would not do. The state district court thus issued several writs of attachment ordering the Dallas County Sheriff to apprehend the child and deliver him to his mother. The record is silent, but apparently the child was eventually placed with the Baton Rouge relatives in September 1983. During the Christmas holidays that year, the child spent time with both his parents. When the holidays were over, apparently Brinkmann would not surrender his son. We infer this from the fact that the state court issued more writs of attachment in the early part of 1984. Evidently, not until the spring of 1984 were sheriff's deputies successful in seizing the child from Brinkmann.

Brinkmann's claims against the deputy sheriffs (and Dallas County) arise from various actions taken in the execution of the writs—specifically, the deputies' entry into Brinkmann's home. Other claims arise from his arrest and confinement in September 1983 for contempt of court due to his consistent disregard of the court's custody decree.

Angry at the actions of the sheriff's deputies, and upset at O'Hara's role in depriving him of custody, Brinkmann sued in federal court under section 1983. In addition to the defendants now before us, he named other county officials, including the Dallas County Commissioners' Court members, the Dallas County Judge, and the Dallas County District Attorney. The district court granted the dismissal motion of these other defendants in September 1985. Brinkmann has given no notice of appeal referring to this order, nor has he made any challenge to it in his sole brief on this appeal. His theories of recovery and the reasons for the dismissal of these defendants are not important to this appeal.

### A. O'Hara

O'Hara moved for summary judgment in February 1986. She listed the facts that she anticipated would be uncontroverted, described her integral role in the state judicial system, and argued that she should be shielded by derivative judicial immunity. In an affidavit, O'Hara categorically denied Brinkmann's accusations. Among other exhibits, O'Hara attached a copy of the October 3, 1983, letter she had sent the Berthelots after the state court had awarded custody of the Brinkmann child to them. This letter suggested that the Berthelots contact the attorney representing the child's mother to work out stated details of the custody arrangement. As it turns out, the copy of this letter attached to O'Hara's summary judgment motion was not the same version she had actually sent in one minor particular: the letter as actually sent had a handwritten notation next to the description of one of the areas that should be worked out with the attorney stating "Disregard—our phone conversation of 10/4 is more relevant."

Brinkmann seized on that variance between the attached letter and the letter as sent in his response to O'Hara's summary judgment motion. He accused O'Hara of perjury and attempting to deceive the court. He did not deny any of the facts that O'Hara presented or address the merits of her argument claiming derivative judicial immunity.

On May 6, 1986, the district court granted O'Hara's motion on grounds that she

enjoyed derivative judicial immunity and, alternatively, that none of Brinkmann's claims showed the existence of a constitutional deprivation. Therefore, his claims, if true, would not be cognizable under section 1983. Brinkmann on May 12, 1986, gave notice of appeal directed to this May 6 order.

### B.  Deputy Sheriffs and Dallas County

On May 2, 1986, the district court directed that counsel for both sides submit a joint pretrial order no later than May 23, 1986. The court also gave the parties until May 28 to file a list of exhibits and witnesses, designate those portions of depositions to be offered at trial, deliver *voir dire* questions and a requested jury charge, and make all motions *in limine*. The court's order stated, "Failure to comply strictly with this order will result in sanctions. If the plaintiff does not *timely* file the required pretrial material, the case *will be dismissed.*" (Emphasis added). Brinkmann did not obey the May 2 order.

On May 30, 1986, the district court held a pretrial conference at which Brinkmann admitted that he had received and understood the May 2 order, that he would have had no difficulty complying with it, but that he interpreted Miscellaneous Order 35 of the Local Rules of Practice for the Northern District of Texas as exempting him from the court's order because he was representing himself. In relevant part, that local order states,

"Pursuant to Rule 16(b) of the Fed.R. Civ.P., the United States District Courts of the Northern District of Texas do by this District Rule exempt from the schedule and planning mandates of Rule 16(b) the following categories of cases.

" . . . .

"5. All cases involving *pro se* plaintiffs, including specifically Title VII cases."

The district court sanctioned Brinkmann by dismissing the case with prejudice. The court told Brinkmann

"Given the fact that you are representing yourself pro se, I do not think that sanctions are possible as far as bar disci-

plinary sanctions are concerned. And since you apparently were aware of my order and consciously chose to disregard it, and have no excuse for doing so, it is my opinion that dismissal with prejudice is the only effective sanction in this case, and that is the disposition I intend to make in this matter."

This was not the first time that Brinkmann had disregarded a court order in this case. The prior violations occurred the previous fall. The first violation was Brinkmann's failure to timely answer defendants' interrogatories as ordered by a magistrate. Brinkmann received the interrogatories on June 29, 1985. He did not answer responsively within thirty days, as required by Fed.R.Civ.P. 33(a). The defendants moved to compel discovery and for costs and attorneys' fees. At the hearing on this motion, Brinkmann's defense was that the interrogatories had not been served on him in duplicate, as required by Local Rule 6.1. The magistrate noted that Brinkmann "had not timely made any objections to the original manner of service of the interrogatories," but granted Brinkmann fifteen more days in which to answer the interrogatories, which were served on him in duplicate at the hearing. Brinkmann appealed the magistrate's order to the district court on September 19—five days before his answers were due. While that appeal was pending, Brinkmann disregarded the magistrate's order by refusing to answer within the additional fifteen days. Again, defendants moved for sanctions.

On October 3, 1985, the district court affirmed the magistrate's order and noted that Brinkmann's appeal "borders on frivolous." Nonetheless, the court stated that Brinkmann's appeal showed that his failure to comply was not in bad faith; accordingly, the court refused sanctions and gave Brinkmann ten more days to answer, a deadline he finally met.

Brinkmann behaved similarly in connection with the district court's October 23, 1985, order directing the parties to file a status report within twenty-one days. The court warned that "[f]ailure to timely submit the status report may result in the

imposition of sanctions, including dismissal without further notice." Apparently in response to this order, on October 28, 1985, Brinkmann wrote the court a letter explaining that under his interpretation of Miscellaneous Order 35, he was exempt from the court's order directing him to file the status report. The defendants filed a status report, Brinkmann never did, and the record does not reflect the imposition of any sanctions.

With the factual context sketched, we turn to the relevant legal principles.

## Discussion

The two questions in this appeal are whether we should affirm the district court's summary judgment in O'Hara's favor and whether the district court abused its discretion in its subsequent dismissal of Brinkmann's remaining claims. As a preliminary matter, however, we must briefly discuss a jurisdictional issue that the case poses.

Brinkmann appealed from the summary judgment in O'Hara's favor before the district court finally disposed of his claims against the remaining defendants. The district court did not append a Rule 54(b) certificate to its order in favor of O'Hara, and so Brinkmann's notice of appeal therefrom would ordinarily be ineffective because the judgment was not final when appealed since claims against other parties remained undisposed of. However, under the rule of *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973), we have jurisdiction over the appeal from the summary judgment because the district court finally disposed of the remaining claims shortly after Brinkmann's premature notice. *See also Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 n. 1 (5th Cir.1985) (applying *Jetco* on similar facts); *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1166 (5th Cir.1984). Also, Brinkmann timely filed notice of appeal directed to the final dismissal of his suit.

## A. Review of Summary Judgment

■ In a very thorough opinion, the district court concluded that O'Hara was enti-tled to derivative judicial immunity and, alternatively, that Brinkmann's claims against her were not cognizable under section 1983. On appeal, Brinkmann does not address the merits of that opinion, which we find quite persuasive. We will not raise and discuss legal issues that Brinkmann has failed to assert. *See Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir.1983) (commenting that "[c]laims not pressed on appeal are deemed abandoned"); *Olgin v. Darnell*, 664 F.2d 107, 108 n. 1 (5th Cir.1981) (same). In practical effect, Brinkmann's one-page recitation of familiar rules governing our review of summary judgments, without even the slightest identification of any error in Judge Fish's legal analysis or its application to Brinkmann's suit against O'Hara, is the same as if he had not appealed that judgment.

Brinkmann's only challenge on the merits, if it can be so described, is to assert that O'Hara and her counsel presented "false evidence" in an affidavit "in an effort to deceive the district court to obtain a summary judgment." What this "false evidence" is Brinkmann never says, and so his abrupt assertion does not remotely suggest grounds for reversal.

■ We might speculate that he is referring to the October 3, 1985, letter attached to O'Hara's motion for summary judgment (a complaint he raised below in his response to O'Hara's motion). But the discrepancy between the letter as sent and the attached letter is not significant factually or legally. Certainly the letter has no bearing on the grounds of the district court's decision. We might speculate that Brinkmann refers, as he did below, to a statement in O'Hara's affidavit that she sent the Berthelots "a copy of Judge Line's October 21, 1983, order," when in reality Judge Line sent no order on that date; his custody order is dated *September* 21, 1983. Again, this mistake has no factual or legal significance in light of the district court's decision to dispose of Brinkmann's claim on the legal grounds of immunity. We affirm the summary judgment in O'Hara's favor.

## B. Review of Dismissal

██ The district court has discretion in selecting a sanction to impose for the disregard of its orders. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). But here the court chose the severest possible sanction. Rule 37(b)(2)(C) (authorizing dismissal and lesser penalties). In light of the due process implications of denying a party his day in court, *Emerick v. Fenick Industries, Inc.,* 539 F.2d 1379, 1381 (5th Cir.1976), our review in this case must be "particularly scrupulous." *Id.* Even under this more demanding standard we believe that the severe sanction was not an abuse of discretion.

██ Though the facts of each case largely determine the appropriateness of dismissal, our precedents enunciate several general principles. First, dismissal with prejudice is normally appropriate only if "its deterrent value cannot be substantially achieved by use of less drastic sanctions." *Marshall v. Segona,* 621 F.2d 763, 768 (5th Cir.1980). Second, if the refusal to comply results from honest confusion or sincere misunderstanding of the order, the inability to comply, or the nonfrivolous assertion of a constitutional privilege, dismissal is almost always an abuse of discretion. *Id.; Emerick,* 539 F.2d at 1381. Third, in general the court may resort to dismissal only if there is " 'a clear record of delay *or* contumacious conduct by the plaintiff.' " *Silas v. Sears, Roebuck & Co.,* 586 F.2d 382, 385 (5th Cir.1978) (quoting *Durham v. Florida East Coast Railway Co.,* 385 F.2d 366, 368 (5th Cir.1967)) (emphasis added). Fourth, when the blame for disregard of the court's order lies with the attorney, not the client, dismissal is usually too severe a sanction. *Silas,* 586 F.2d at 385; *Sig M. Glukstad, Inc. v. Lineas Aereas Nacional-Chile,* 656 F.2d 976, 978 (5th Cir.1981). Finally, if the other party's preparation for trial has not been "substantially prejudiced," dismissal may well be inappropriate. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 514 (5th Cir.1985).

██ This case is closer than many in which this Court has upheld the sanction of dismissal. *See generally Marshall,* 621 F.2d at 767 (citing and discussing cases upholding dismissal where defendant ignored repeated orders). Yet the following considerations have prompted us to affirm the district court's dismissal here.

The court's May 2 order could not have been more clear and unequivocal, and Brinkmann never claims that it confused him. On the contrary, he boldly told the court that he was free to disregard the order because of a local rule. Brinkmann had first drawn the attention of the court to this rule in his October 28, 1985, letter, and he should have interpreted the court's decision to issue the May 2 order as a clear indication that the court did not concur in his interpretation. This should have been even more apparent to Brinkmann when the court did nothing to rescind or modify the May 2 order after Brinkmann's affidavits of May 19 and 22, filed with the district court, which again insisted that Miscellaneous Order 35 exempted him from the court's order. Quite plainly, Brinkmann knew what the May 2 order meant and he knew the district court disagreed with his interpretation of Miscellaneous Order 35.

The information sought by the May 2 order was innocuous and was necessary for the efficient and orderly conduct of the trial. Brinkmann admitted that he was able to timely supply the information and made no claim that the information was privileged. Instead, he brazenly defied the court. Perhaps his confidence was shored by his success the previous fall in delaying for almost a month and a half his responses to interrogatories on the basis that he had been served with one, rather than two, sets, as required by the local rules. Or perhaps it was his unscathed evasion of the court's previous order to supply a status report that made him so sure of himself. However, as a student of the local rules, he must have been aware of Local Rule 1.1, which states, "These local rules shall govern all civil and criminal proceedings before the United States District Court for the Northern District of Texas.... However, *notwithstanding these rules,* a Presiding

Judge may direct the parties to proceed in any manner that he deems just and expeditious in a particular case." (Emphasis added). Further, the district court's May 2 order as to furnishing witness lists and the like was not a mandatory Rule 16(b) scheduling order as to which Miscellaneous Order 35 exempted *pro se* cases. Thus there was no legal basis for Brinkmann's intentional disregard of Judge Fish's May 2 order. *Cf. Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975) ("[A]ll orders and judgments of courts must be complied with promptly.... Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); *In re Grand Jury Proceedings,* 601 F.2d 162, 168–69 (5th Cir.1979) (same); *Lewis v. S.S. Baune,* 534 F.2d 1115, 1119 (5th Cir.1976) ("Of course, parties, generally, should always obey court orders regardless of whether they think the orders are correct."). The contumaciousness of Brinkmann's conduct justifies the sanction.

The May 2 order warned that failure to timely comply with it *would* result in dismissal. Brinkmann knew this, so his misplaced reliance on a local rule was a calculated decision. This is not a case where the court has visited the sins of an attorney on the innocent client. Brinkmann represents himself, and will alone bear the consequences of his own conduct.

Without the information that Brinkmann was to supply, the defendants' preparation would have been severely hampered. For example, they would not know what witnesses or exhibits to anticipate. Trial loomed in a week. The court would have had to reschedule trial to avert prejudice to defendants. This assumes, of course, that Brinkmann could have been forced to eventually cooperate by a lesser sanction. Judge Fish specifically found, however, that dismissal was the only effective sanction in this case. After reviewing the record, we are inclined to agree.

Brinkmann's strategy since his divorce has been to harass any official remotely connected to his divorce case. He has never cogently articulated the legal bases for his claims, yet he continues to disrupt the affairs of others with bombastic threats. This is his second appeal in this Court. In the first case he sued his ex-wife, a state judge, and various attorneys. The district court dismissed that suit and we affirmed, characterizing the action as "frivolous." *Brinkmann v. Johnston,* 793 F.2d 111, 112 (5th Cir.1986). As he has forcefully explained to various county officials, Brinkmann has sought to enlist the aid of the United States president, vice president, the United States senators from Texas, and the Justice Department in his quixotic battle. He has threatened to invite "Sixty Minutes" to profile his alleged mistreatment. While his son was in the custody of the Berthelots, he apparently brought a kidnapping suit against them and the local school district where his son was attending. His refusal to answer interrogatories because he did not receive two copies of them, even if justified by a local rule, strikes us as petulant. Brinkmann responded to Judge Fish's grant of O'Hara's motion for summary judgment by demanding that Judge Fish recuse himself from the remainder of Brinkmann's suit because of bias. In short, the portrait of Brinkmann that emerges from the record is of a shrill and blustery litigant not likely to be brought into line by lesser sanctions. At least it was not an abuse of discretion for the district court to so conclude.

Certainly a good many of Brinkmann's problems stem from the fact that he represents himself. Though we tend to be somewhat more lenient with *pro se* litigants, we cautioned in the appeal of Brinkmann's prior case that "[t]hose who venture into federal court without the assistance of counsel cannot ... be permitted to enjoy much or protracted advantage by reason of that circumstance." 793 F.2d at 113. With this in mind, and with the hope that the severity of this sanction will deter other litigants otherwise inclined to disregard clear and reasonable court orders, *see National Hockey League,* 96 S.Ct. at 2781, we hold that the district court did not abuse its discretion in dismissing Brinkmann's claims with prejudice.

**Conclusion**

We affirm the summary judgment in O'Hara's favor and the dismissal with prejudice of Brinkmann's claims against Dallas County and Deputy Sheriffs Abner, Tucker, Moeller, and Herrera.

AFFIRMED.