# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2022

Lyle W. Cayce
Clerk

No. 20-61188

JOSEFA ELENA RIVERA-REYES; EDDY ALEXANDER BONILLA-RIVERA; ASHLY PAMELA BONILLA-RIVERA; KATERIN RIVERA BONILLA-RIVERA; JENCY JIRETH MARTINEZ-BONILLA,

*Petitioners*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent.*

---

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A209 857 491
Agency No. A209 857 488
Agency No. A209 857 487
Agency No. A209 857 489
Agency No. A209 857 490

---

Before JOLLY, WILLETT, and ENGELHARDT, *Circuit Judges.*

No. 20-61188

Per Curiam:*

Josefa Elena Rivera-Reyes and her daughter, Katerin Elena Bonilla-Rivera, on behalf of themselves and their children, petition for review of the Board of Immigration Appeals's (BIA's) decision. They appealed the immigration judge's (IJ's) denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) to the BIA. Some of Petitioners' arguments have been abandoned,[1] and we find no error in the BIA's resolution of the remaining issues. The petitions for review are DENIED.

I

Josefa Elena Rivera-Reyes fled Honduras with her daughter Katerin Rivera Bonilla-Rivera because she was afraid that gang members planned to kidnap and kill Katerin. Josefa also brought her two other children and one of her grandchildren (Katerin's child) with her. Josefa left Honduras because she was told that two gang members had fallen in love with Katerin, imperiling Katerin. Josefa testified that when two gang members fall in love with the same woman, "gang law" dictates that the gang leader must make the woman "disappear" to prevent infighting. A few days after Josefa learned that Katerin was in danger, a man rode past her house on a bicycle. Josefa believed that the gang sent him to spy on the family.

Josefa and Katerin came to the United States and filed applications for asylum and withholding of removal and relief under the CAT. The IJ denied

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] Petitioners withdrew their CAT claim on appeal to the BIA, so we consider only their asylum and withholding of removal claims.

No. 20-61188

their claims. Petitioners appealed to the BIA, and the BIA dismissed their appeal.

## II

We start with Petitioners' argument that the BIA erred in dismissing their claim for asylum. An applicant for asylum must show that she "is a person (1) who is outside of h[er] country and is unable or unwilling to return because of persecution or a well-founded fear of persecution and (2) who has demonstrated that 'race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason' for the persecution." *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (emphasis omitted) (quoting *Tamara–Gomez v. Gonzales*, 447 F.3d 343, 348 (5th Cir. 2006)). A "particular social group" (PSG) is defined as "a group of persons that share a common immutable characteristic that they either cannot change or should not be required to change because it is 'fundamental to their individual identities or consciences.'" *Id.* at 518 (quoting *Mwembie v. Gonzales*, 443 F.3d 405, 414–15 (5th Cir. 2006)). A PSG is cognizable only if (1) "the group's shared characteristic gives the members the requisite *social visibility* to make them readily identifiable in society" and (2) "the group can be defined with sufficient *particularity* to delimit its membership." *Id.* at 519 (quoting *In re A–M–E & J–G–U–*, 24 I. & N. Dec. 69, 69 (BIA 2007) (emphasis in original)).

Josefa argued she was persecuted based on her membership in four proposed PSGs: (1) "Honduran mothers whose daughters are objectified by gang members"; (2) "Single Honduran mothers opposed to gang oppression"; (3) "Honduran mothers raising children in lower socio-economic communities"; and (4) "Immediate family members of" Katerin. The IJ dismissed her claim because it found that her proposed PSGs were not cognizable and any danger she feared was due to typical "gang-related

criminal reasons" which are not a sufficient basis for asylum. The BIA affirmed on that basis, and we find no error. The first three PSGs founder on both the social visibility and particularity requirements. Like the PSG we rejected in *Orellana-Monson*, the groups lack particularity because they are "exceedingly broad and encompass[] a diverse cross section of society. Only shared experience . . . unites them." *Id.* at 521 (internal quotation marks and citation omitted). They also lack "social visibility"—for example, Josefa provided no evidence that "Single Honduran mothers opposed to gang oppression" are "perceived as a group" by Honduran society. *Id.*

The BIA assumed that Josefa's fourth proposed PSG was cognizable but found that she had not shown a sufficient nexus between threats of persecution and Josefa's familial ties to Katerin. We cannot disturb this factual finding unless the Josefa shows that "the evidence was so compelling that no reasonable factfinder could conclude against [her]." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009). She has not met that daunting standard. As the IJ noted, Josefa did not "establish[] that she or her family is in a substantially different situation than anyone who has crossed the gang or is perceived to be a threat to the gang's interests."[2] To the contrary, Josefa and Katerin both testified that violence and threats of violence were commonplace in their neighborhood. Gang violence was often meted out for purely economic reasons or no reason at all. The husband of one of Josefa's friends was killed for unknown reasons, and a neighbor was killed so the gang could steal his motorcycle. Because the BIA could have reasonably concluded that any threats against Josefa were for "gang-related criminal

---

[2] While we review the BIA's decision—not the IJ's—we may "review the IJ's findings and conclusions if the BIA adopts them." *Wang*, 569 F.3d at 536. Here the BIA did so.

No. 20-61188

reasons" in general, and not animus against Josefa's family in particular, Josefa's fourth ground for relief also fails.

Katerin sought relief based on her membership in three proposed PSGs, which were similar but subtly different than Josefa's. But Petitioners do not challenge the IJ's or BIA's findings that Katerin's proposed PSGs were not cognizable. As a result, any challenge to that finding is abandoned. *Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003) (citing *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987)).

Finally, because Petitioners failed to show that they are entitled to asylum, their claims for withholding of removal under 8 U.S.C. § 1231(b)(3) must also be dismissed. A failure to show membership in a PSG is fatal to a claim for withholding of removal as well as asylum. *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994) (quoting *Rivera-Cruz v. INS*, 948 F.2d 962, 966 (5th Cir. 1991)). The same is true for the nexus requirement: Failure to prove a nexus for purposes of asylum also dooms a withholding of removal claim. *See, e.g.*, *Rivera-Cruz*, 948 F.2d at 966("[I]t is easier to qualify for asylum than for a withholding of deportation.").[3] Because Petitioners' claims for asylum all

---

[3] Petitioners rely on *Barajas-Romero v. Lynch*, 846 F.3d 351, 356–60 (9th Cir. 2017), which held that withholding of removal claims are subject to a lesser nexus requirement than asylum claims. *Barajas-Romero* reasoned that parties seeking withholding of removal under 8 U.S.C. § 1231(b)(3)(A) need only show that a protected ground was "a reason" why they would face persecution, not "one central reason" (the nexus requirement for asylum claims). *Id. Barajas-Romero*'s reasoning was recently adopted by the Sixth Circuit. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 271–72 (6th Cir. 2020). But we held in *Shaikh v. Holder* that the same nexus standard applies for applications for asylum and withholding of removal claims. 588 F.3d 861, 864 (5th Cir. 2009). The rule of orderliness prevents us from revisiting *Shaikh*. *See Cortez-Ramirez v. Garland*, 860 F. App'x 869, 873 (5th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 756 (2022) (*Shaikh*'s holding that the "one central reason" test applies to both asylum and withholding of removal claims was binding precedent); *Santos-Palacios v. Garland*, No. 20-60123, 2021 WL 3501985, at *2 (5th Cir. Aug. 9, 2021) (per curiam) (same).

No. 20-61188

failed under either the protected group or nexus requirements, their claims for withholding of removal must also be dismissed.

The petitions for review are DENIED.