# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2025

Lyle W. Cayce
Clerk

―――――――――

No. 25-40032

―――――――――

Madelyn Marina Quiroz; Marina Naomi Hernandez Quiroz,

*Plaintiffs—Appellants*,

*versus*

Eduardo Hernandez; City of Dayton; Theo Melancon, *City of Dayton, City Manager*; Dickenson City Manager; Robert Vine, *Dayton City Police Chief*; John D. Coleman, *Dayton City Police Captain*; Terri Hughes, *Criminal Investigation Division Lieutenant, Dayton City*; Caroline Wadzeck; Kristen Seibert; City of Dayton Fire Department; Murphy Green; Jennifer Bergman Harkness, *Liberty County District Attorney*; Matthew Poston, *Liberty County Attorney*; Matthew Saldana; City of Liberty, Texas; Katelyn Grimes; Allegiance Mobile Health Medical Service; Steve Smith; Ramji Law Group; Jamey Wayne Bice, *also known as* Jaime Bice, *also known as* James Bice, *also known as* Jamey Bice; Stephanie Lee Blum Bice; Morgan Skye White; Union Pacific Railroad Company; Adam Ramji

*Defendants—Appellees*.

―――――――――――――――――――――――

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:23-CV-273

―――――――――――――――――――――――

Before SOUTHWICK, HIGGINSON, and DOUGLAS, *Circuit Judges*.

PER CURIAM:

This case arises out of a serious car accident involving the reckless driving of two teenagers. Appellant Madelyn Marina Quiroz and her mother Marina Naomi Hernandez Quiroz challenge the district court's dismissal of all of their claims against twenty-three named defendants.[1] The district court adopted the Magistrate Judge's report and recommendation and dismissed Appellants' claims against all defendants with prejudice, with the exception of Eduardo Hernandez, whose claims were dismissed without prejudice. The district court described the Second Corrected Amended Complaint (the "Operative Complaint") as "riddled with pleading deficiencies, difficult to decipher throughout, and replete with vague, conclusory allegations."[2] Nevertheless, the district court was able to discern multiple claims relating to the alleged negligence of first responders and private parties, as well as discrimination claims arising under 42 U.S.C. § 1983 against various city officials related to their handling of the post-accident investigation. Madelyn and her mother now appeal the ruling of the district court, arguing that they should be given a chance to replead for a fourth time to address these deficiencies.

---

[1] Defendant Nissan North America was voluntarily dismissed by the parties and was not named in this appeal.

[2] It is important to note that Madelyn and her mother are not proceeding pro se—they procured counsel prior to the filing of the Operative Complaint. Counsel entered an appearance representing the Appellants on November 9, 2023. The Second Amended Complaint was filed on November 20, 2023, and the "Second (Corrected) Amended Complaint," at issue here, was filed on November 21, 2023. Due to the "correction" made by Appellants, though it is titled as a "Second" Complaint, the Operative Complaint is functionally their third. The changes made in the Operative Complaint were not limited to scrivener's errors—Appellants instead made changes to the body of the Operative Complaint, including the descriptions of parties and the claims against them.

No. 25-40032

Additionally, they argue that the district court erred in its dismissal of all defendants. Having found no error or abuse of discretion, we AFFIRM.

I

On January 23, 2020, appellant Madelyn Quiroz, then just 16 years old, was a backseat passenger in a car driven by appellee Morgan White. Morgan was driving at a dangerous speed—around 86 to 96 miles per hour—on a roadway with a posted speed limit of 30 miles per hour. She was racing appellee Eduardo Hernandez, who was driving a separate vehicle. Morgan eventually lost control of her vehicle, launching it airborne approximately 10 to 15 feet over a ditch and landing on railroad tracks owned by appellee Union Pacific Railroad Company. Madelyn suffered serious injuries from the crash, including a broken back, a serious spinal cord injury, broken ribs, and internal bleeding. Due to these injuries, Madelyn is now a paraplegic, confined to a wheelchair and paralyzed from the chest down. Madelyn and her mother sued various city officials responsible for the immediate care given to Madelyn after the accident and the resulting crash investigation. They also brought claims against Eduardo, Morgan, and members of Morgan's family for their involvement in the crash.

II

Given the high number of defendants involved in this appeal, our court will analyze the distinct (although overlapping) claims brought against each of the twenty-three defendants. For the sake of brevity, we have grouped certain defendants to address all claims against them. We review the district court's dismissals for failure to state a claim de novo. *See Cody v. Allstate Fire & Cas. Ins.*, 19 F.4th 712, 714 (5th Cir. 2021). Likewise, we review the district court's dismissal for lack of subject matter jurisdiction de novo. *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021).

3

No. 25-40032

A

Appellants first bring general § 1983 discrimination and negligence claims against appellees Allegiance Mobile Health, a private medical transport company, and one of its paramedics Steve Smith (the "Allegiance Defendants"). Appellants claim that the Allegiance Defendants discriminated against Madelyn and deprived her of "life liberty and property in the pursuit of happiness and also [] denied [her] equal protection of the law." This claim stems from an alleged argument between Smith and the City of Dayton Fire Chief, Murphy Green, regarding whether or not to medivac Madelyn from the scene of the accident. Appellants argue that this disagreement led to a significant delay in Madelyn receiving treatment for her injuries. Appellants further claim that Smith "withheld medical treatment and abandoned [Madelyn] . . . le[aving] a critical patient in the care of a much lower level [EMT]."

The district court characterized Appellants' claims against the Allegiance Defendants as vague and conclusory. Nevertheless, the district court discerned several possible claims against them: "a vague claim for discrimination, negligence, and violations of due process, equal protection, and the Fourth Amendment[3] pursuant to § 1983". We analyze each claim below.

1

Appellants argue that the district court erred in concluding that they failed to properly show that the Allegiance Defendants were state actors for the purposes of their § 1983 claims, and that any such claims would be time-

---

[3] Because Appellants made no claim relating to the unlawful search or seizure of Madelyn's property or person, our court will construe their Fourth Amendment claim as a general § 1983 claim for discrimination. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. *See Sorenson v. Ferrie* 134 F.3d 325, 328 (5th Cir.1998).

4

No. 25-40032

barred. Additionally, Appellants claim that the district court erred in concluding that they failed to properly assert claims against the Allegiance Defendants. Having found no error, we affirm.

i.

Section 1983 requires state involvement before a cause of action can be asserted thereunder. *Ford v. Harris Cnty. Med. Soc.*, 535 F.2d 321, 323 (5th Cir. 1976). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)). Allegiance is a private emergency transport company. Smith, an employee of Allegiance, is a private citizen. He is not employed by the state of Texas, or by the federal government. Appellants argue that Allegiance, as a contractor for the City of Dayton, acted under color of law in undertaking a function intended by the city. Appellants have not cited to a case where our court has found a private company contracting with a municipality for any function similar to an ambulance service to be a state actor for the purposes of a § 1983 claim and we have not found one.[4] Further, as explained, *infra*, Appellants' § 1983 claim against the Allegiance Defendants fails on other grounds.

---

[4] In other contexts, the Supreme Court has held that contractors for the government are not state actors for tax purposes. *See United States v. New Mexico*, 455 U.S. 720 (1982). *See also United States v. Boyd*, 378 U.S. 39, 47 (1964) ("[w]e cannot conclude that [the contractors], both cost-plus contractors for profit, have been so incorporated into the government structure as to become instrumentalities of the [State].")

Further, the Court has held that to be liable under § 1983, a private entity must be performing "powers traditionally exclusively reserved to the State." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (citation modified). "It is not enough that the federal, state, or local government exercised the function in the past, or still does." *Id.*

No. 25-40032

To adequately plead a discrimination claim under § 1983, a plaintiff must allege (1) that they were treated differently from a similarly situated individual of a different race, and (2) that the differential treatment was motivated by discriminatory intent. *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (citing *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004)). Appellants vaguely allude to Morgan White receiving different treatment but fail to allege any facts to support a claim that that the treatment was related to Madelyn's race. Therefore, Appellants fail to adequately allege any discriminatory intent on behalf of any of the Allegiance Defendants.

Under these facts, we hold that the district court properly concluded that the Allegiance Defendants were not state actors and that there was no evidence of discriminatory intent for the purposes of § 1983. Nevertheless, due to Appellants' inartful pleading, and out of fairness to Madelyn, we consider their timeliness arguments below.[5]

ii.

"Section 1983 does not prescribe a statute of limitations. Instead, the statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)) (citation modified). In Texas, that statute of limitations period is two years.[6] Tex. Civ. Prac. & Rem. Code § 16.003. "Just as we borrow the forum state's

---

[5] Appellants also assert various tolling provisions, without jurisprudential support, throughout their Operative Complaint.

[6] Additionally, in Texas, the statute of limitations period for a negligence claim is also two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Ledford v. Keen*, 9 F.4th 335, 338 (5th Cir. 2021).

statute of limitations for § 1983 purposes, we borrow also the state's tolling principles." *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). In Texas, equitable tolling is applied "sparingly"—plaintiffs must be able to prove certain circumstances to allow for tolling to be applied. *Hand v. Stevens Transp., Inc. Emp. Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App. 2002). Litigants cannot use the doctrine to "avoid the consequences of their own negligence." *Id.* Two exceptions recognized under Texas law operate to delay or toll the limitations period—the discovery rule and the doctrine of fraudulent concealment. *See Clouse v. S. Methodist Univ.*, No. 24-10461, 2025 WL 2427755, at *2 (5th Cir. 2025) (unpublished) (citing *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015)).

Madelyn and her mother filed their original complaint on July 17, 2023, one day before the two-year statute of limitations period expired. Appellants did not name the Allegiance Defendants in their original complaint. The Allegiance Defendants were not named as parties until Appellants filed their first amended complaint on October 12, 2023. In response to the magistrate judge's conclusion that their claims against the Allegiance Defendants were time-barred, Appellants argued that their claim against the Allegiance Defendants should relate back to the original complaint. Appellants made no specific argument for fraudulent concealment or the discovery rule. Nevertheless, the district court charitably considered whether either doctrine applies. We review its conclusions, beginning first with the discovery rule.

"To begin, the discovery rule is a narrow exception reserved for exceptional cases and its applications should be few and narrowly drawn." *Clouse*, 2025 WL 2427755, at *4 (quoting *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (citation modified). The rule is limited to circumstances in which a plaintiff's injury is "inherently undiscoverable; that is unlikely to be discovered within the prescribed limitations period despite the exercise of

reasonable diligence." *Id.* (quoting *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023) (citation modified). The inquiry is "not case-specific: the question is whether the type of injury alleged is the kind that could ordinarily be discovered through the exercise of reasonable diligence." *Id.* at *4.

Here, it is axiomatic that Madelyn's injuries were discoverable—they were the very basis of the suit originally filed in October of 2023. Further, Appellants failed to bring forth any notions that her injuries were undiscoverable in the Operative Complaint or in the instant appeal. Accordingly, the district court correctly concluded that the discovery rule does not apply here.

Under the doctrine of fraudulent concealment, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, [a statute of] limitations does not begin to run until the [plaintiff], using reasonable diligence, discovered or should have discovered the injury." *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021).

Appellants raise various vague and conclusory allegations in the Operative Complaint, accusing different appellees of deleting body camera footage, withholding medical records, failing to investigate certain leads, and altering and removing physical evidence found within the car involved in the accident. Although they make these claims generally in their complaint, Appellants fail to bring forth specific allegations of fraudulent concealment as it relates to their untimely filing against the Allegiance Defendants. We therefore agree with the district court in concluding that the doctrine of fraudulent concealment does not apply.

2

On appeal, Appellants argue that an argument between Smith and appellee Murphy Green led to a ninety-minute delay in Madelyn receiving

medical treatment.  For the purposes of this opinion, we will construe this as a general claim for negligence against the Allegiance Defendants.  Having determined that neither the doctrine of fraudulent concealment nor the discovery rule saves Appellants' § 1983 claims from being barred by Texas's statute of limitations, we turn to the doctrines of misnomer and misidentification.[7]

In response to the Allegiance Defendants' motion to dismiss, Appellants cite to the doctrines of misnomer and misidentification in support of their argument that their untimely claims should relate back to their original complaint.  The district court disagreed, finding the doctrines of misnomer and misidentification inapplicable.  On appeal, Appellants make the same argument.  The crux of the Allegiance Defendants' opposition rests on the argument that Appellants fail to raise any facts that would relate their otherwise untimely claims back to the original complaint under the doctrines of misnomer and misidentification.

Federal Rule of Civil Procedure 15(c)(1)(A) provides that an amendment relates back to the date of the original pleading when a new party was timely served, the amendment does not violate any applicable statutes of limitations, and the party sought to be added:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[7] On appeal, it is unclear whether Appellants mean to claim misnomer and misidentification as to their negligence claim along with their § 1983 claim.  Out of an abundance of caution, we will consider the argument in defense of both claims being untimely.

FED. R. CIV. P. 15(c)(1)(C)(i)–(ii).[8] In other words, under Rule 15(c), the party to be brought in by amendment must have received notice of the action such that it would not be prejudiced in defending on the merits, and it must have known or should have known that the action would have been brought against it but for a mistake concerning the party's proper identity. "Furthermore Rule 15(c) is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 947 (S.D. Tex. 2013) (quoting *Miller v. Mancuso,* 388 Fed. Appx. 389, 391 (5th Cir.2010) (citation modified). "A misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009). Further, Rule 15(c) only applies to substituting or changing a defendant rather than adding a new one. *See Tapp v. Shaw Envtl., Inc.*, 401 F. App'x 930, 932 (5th Cir. 2010) (per curiam).

In reviewing Texas statutes of limitations, our court has held that FED. R. CIV. P 15(c) and TEX. CIV. PRAC. & REM. CODE § 16.068 control, such that "a claim will be deemed to relate back if relation back is permitted under state law, even if it is not permitted under federal law." *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901 (5th Cir. 2012).

Texas law states that:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment

---

[8] Similar to Texas law, FED. R. CIV. P. 15(c) also requires that the action concerning the newly added parties arise out of the same transaction or occurrence, and not be barred by any applicable statute of limitations.

> or supplement to the pleading that changes the facts or grounds
> of liability or defense is not subject to a plea of limitation unless
> the amendment or supplement is wholly based on a new,
> distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE § 16.068. Misidentification "arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *Houston Orthopaedic*, 295 S.W.3d at 325. Misnomer occurs when a party misnames itself or another party, but the correct parties are involved. *Id.* "But we have made clear that tolling is generally not available in cases of misidentification, which involve suing the wrong defendant with a name similar to the one against which suit was intended." *Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 628 (Tex. 2023) (citing *Houston Orthopaedic* at 325).

Appellants claim on appeal that they intended to name the Allegiance Defendants, but instead named the City of Dayton, believing that the City of Dayton was responsible for Madelyn's triage immediately following the accident. This assertion does not invoke the doctrine of misnomer or misidentification: the Allegiance Defendants are a private entity, wholly independent from the City of Dayton, and their names are in no way similar.

Appellants additionally cite to *Bailey v. University of Texas Health Science Center at San Antonio*, wherein plaintiffs were able to successfully relate back their medical negligence claims to add a negligent doctor's employer. 261 S.W.3d 147 (Tex. App. 2008) 332 S.W.3d 395 (Tex. 2011). In that case, though the two defendants did not have similar names, the intended party was the original defendant's governmental employer and had full knowledge of the lawsuit at the time it was originally filed. *Id.* at 152–53.

The same is not true in Madelyn's case. She and her mother filed suit against the City of Dayton mistakenly believing that the city was responsible for her emergency medical care. At the time of the original filing, the

Allegiance Defendants had no knowledge that they were an intended party of the lawsuit. Additionally, the Allegiance Defendants and the City of Dayton do not enjoy the employer-employee relationship present in *Bailey*. On the facts before us, we cannot say that the Allegiance Defendants knew or should have known that a lawsuit filed against the City of Dayton was meant to include them based on their involvement in an accident. Therefore, we conclude that the district court did not err in determining that the doctrines of misnomer and misidentification do not apply to the untimely claims made against the Allegiance Defendants.

3

Any negligence or § 1983 claims against Steve Smith, the paramedic employed by Allegiance, are likewise time-barred. *See id.* Smith was not named as a party in the original complaint. Smith, like his employer, was not named until Appellants filed their first amended complaint on October 12, 2023, outside of the statute of limitations for any negligence or § 1983 claim. As a private individual who was working for a private ambulance company, absent any additional facts, we must agree with the district court that Smith was properly dismissed along with his employer. We therefore conclude that all of Appellants' claims against the Allegiance Defendants are barred.

B

The Operative Complaint names the City of Dayton, the former mayor of Dayton Caroline Wadzeck, the former city manager Theo Melancon, former "Deputy City Manager/Chief [of] Police" Robert Vine, former police captain John D. Coleman, former criminal investigation division lieutenant Terri Hughes, police sergeant Kristen Seibert, the Dayton Volunteer Fire Department, and its former chief Murphy Green as defendants, (hereinafter "Dayton Defendants"). The claims brought against the Dayton Defendants are similar to those brought against the Allegiance

Defendants.  Specifically, Appellants contend that the Dayton Defendants "denied Madelyn [] life, liberty, and property in the pursuit of happiness and [] also denied [her] equal protection of the law.  Additionally, Appellants claim that the Dayton Defendants "allow[ed] a faulty investigation to continue, depriving [Madelyn] of Crime Victim Compensation benefits for over two and a half years."  We will analyze the claims against each of the Dayton Defendants below.

1

We begin first with former mayor Caroline Wadzeck, the City of Dayton Fire Department, and its chief Murphy Green.  The Operative Complaint appears to allege equal protection and due process claims against these defendants pursuant to § 1983.  Like the § 1983 claims against the Allegiance Defendants, the claims against these defendants are time-barred.  Under Texas law, the statute of limitations for § 1983 claims is two years. *See Schirle*, *supra*; TEX. CIV. PRAC. & REM. CODE § 16.003(a).  Appellants failed to name the City of Dayton Fire Department, Wadzeck, and Green in their original complaint.  These defendants were first named in the first amended complaint filed more than two years after the statute of limitations expired.  Appellants claim that they should have been afforded the opportunity to replead to address their failure to timely name the above-mentioned defendants, or alternatively that their dismissals should have been without prejudice.  Because the Appellants raise this argument as to every named defendant, this opinion will address, *infra*, the district court's dismissal with prejudice as to all defendants.  Having discerned no other defense raised against the dismissal of these defendants by the Appellants, we affirm the district court's dismissal as to Wadzeck, the City of Dayton Fire Department, and Green as time-barred.

No. 25-40032

2

In addition to suing many of the City of Dayton's first responders and firefighters, Appellants appear to have attempted to bring a *Monell* liability claim against the City of Dayton itself. These claims are again vague and difficult-to-decipher. The Operative Complaint states that the City of Dayton and its officials "worked to obstruct justice in violation of Madelyn's First Amendment rights," and point to various pieces of evidence that they claim were purposefully lost in the post-accident investigation. The district court discerned these additional claims to be another § 1983 claim as well as a claim for *Monell* liability against the City of Dayton.

Section 1983 "makes liable every person who, under color of state law, violates federal constitutional rights." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (citation modified). To assert a *Monell* liability claim under § 1983 against the City of Dayton, an appellant must allege three elements: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right by a policymaker whose "moving force" is the policy or custom. *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). There are three ways to establish a "policy" under *Monell*:

> First, a plaintiff can show written policy statements, ordinances, or regulations.[] Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy.[] Third, even a single decision may constitute municipal policy . . . when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citation modified).

No. 25-40032

The district court determined that the Appellants' *Monell* claim fails on its face. We agree. Appellants fail to bring forth any facts showing *any* ordinance or written policy statements, fail to show any widespread discriminatory practice in the City of Dayton, and, finally, fail to point to any specific act forming the basis of a § 1983 claim. Appellants again string together vague and conclusory allegations that fail to give rise to any violations of Madelyn's constitutional rights by the City of Dayton. Appellants do not attempt to support their claims against the City of Dayton, instead only arguing that they should have been given a chance to replead, that request seemingly being their last line of defense of all failing arguments.

3

As to the remaining Dayton Defendants, former city employees Vine, Coleman, and Hughes, each named in their official capacity, the district court discerned these claims to be redundant echoes of the claims against the City of Dayton itself. Again, we agree.

Because the City of Dayton is a named party, and because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[,]" we hold that the district court properly dismissed Appellants' claims against the above-named defendants as duplicative. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that suits against state officials in their official capacities should be treated as suits against the State) (citation modified). The Operative Complaint is rife with duplicative claims and it is apparent that Appellants simply restated the same claims against multiple defendants with the hope that that at least one would succeed. We therefore conclude that the claims against the remaining Dayton Defendants were properly dismissed as duplicative.

15

In sum, the district court did not err in dismissing Appellants' claims against Vine, Coleman, and Hughes. These claims against the city's officials were properly dismissed for failing to state a claim, and for being duplicative of previously brought claims.

C

We next turn to appellee the City of Liberty, its fire department, and appellee Katelyn Grimes (collectively, the "Liberty Defendants"). In the Operative Complaint, Appellants name the City of Liberty, Texas along with City of Liberty paramedic Katelyn Grimes. Although the City of Liberty is named in the caption of the Operative Complaint, nowhere in the body of the complaint do the appellants list any causes of action against the city itself. The same can be said of Appellants' brief *and* their reply.

In analyzing the allegations against the City of Liberty, the district court construed the "extremely sparse and conclusory" claims as violations of Madelyn's due process and equal protection rights and found a discrimination claim under § 1983. As a threshold matter, the district court concluded that because Appellants failed to bring forth any claims against the City of Liberty in the Operative Complaint, they abandoned all claims against it. We agree. On appeal, Appellants likewise make no claims as to the City of Liberty. In fact, they make no mention of the city anywhere in their briefs. As such, all claims against the City of Liberty were waived by Appellants when they first failed to name any cause of action against the city, and second failed to raise any issues on appeal as to this defendant. *See Ratcliff v. Texas*, 699 F. App'x 410, 411 (5th Cir. 2017) (unpublished) (citing *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

Turning to paramedic Katelyn Grimes and the City of Liberty Fire Department, the Operative Complaint alleges that Grimes and the Liberty Fire Department discriminated against Madelyn and "denied [her] of life,

No. 25-40032

liberty, and property in the pursuit of happiness and [] also denied Madelyn [] equal protection of the law." It further alleges that Madelyn's father, Flavio Quiroz was denied access to his injured daughter by Grimes at the scene of the accident, and that Madelyn's medical history was not obtained by Grimes, or by other emergency medical personnel on the scene.

The district court concluded that any possible discrimination claim fails because Appellants "state no facts at all showing that [Grimes or the Liberty Fire Department] discriminated against Madelyn and fail to allege any specific action for discrimination." We agree. Merely stating that discrimination has taken place without alleging supporting facts does not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S., 662678 (2009).[9]

Appellants' failure to state a claim, combined with their inability to name any cause of action against the Liberty Defendants, and the high likelihood that any claim is barred by the applicable statutes of limitations, leads our court to conclude that the district court correctly dismissed the claims against them.

D

In addition to the Appellants naming the City of Liberty, Texas, they also name city employees Jennifer Harkness, Matthew Poston, and Matthew Saldana. Harkness is the Liberty County District Attorney, and Poston and Saldana are Liberty County assistant district attorneys (the "Liberty County

---

[9] Additionally, had the district court been able to discern a plausible § 1983 claim, any such claim likely would be barred by applicable statutes of limitations. Appellants failed to name Katelyn Grimes or the Liberty Fire Department in their original complaint—they were not named as defendants until over two after the statute of limitations had run. As discussed *supra*, the statute of limitations for § 1983 claims in Texas is two years. *See Schirle* 484 F. App'x at 901–02; TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).

Defendants"). Appellants claim that the Liberty County Defendants discriminated against Madelyn, denying her equal protection of the law. Specifically, Appellants claim that Harkness and the assistant district attorneys assigned to the criminal case against Morgan White did not properly prosecute White, "fail[ing] the public and [the] victim." Appellants claim that Poston simply felt that it would "be too hard to try this case" leading to his refusal to review new evidence. Appellants argue that the Liberty County Defendants' failure to adequately prosecute White was the result of discrimination against Madelyn due to her race and deprived her of Crime Victim Compensation benefits and due process of law.

The district court, "for the sake of thoroughness" assumed that Appellants intended to assert claims under federal and state law. The court then concluded that all Liberty County Defendants were entitled to Eleventh Amendment immunity from any federal claims, and absolute prosecutorial immunity from any claims made against them in their individual capacities. We agree.

1

Appellants' claims against the Liberty County Defendants in their official capacities unquestionably relate to decisions made in their roles as prosecutors for Liberty County. They are therefore entitled to immunity under the Eleventh Amendment. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (granting Eleventh Amendment immunity to district attorneys and assistant district attorneys sued in their official capacities for claims relating to decisions about whether and when to bring charges); *see also Moreno v. Donna Indep. Sch. Dist.*, 589 F. App'x 677, 680 (5th Cir. 2014) (finding that the Eleventh Amendment shields district attorney from official-capacity liability). We note, however, that claims barred by sovereign immunity should be dismissed without prejudice, not with prejudice. *United States v.*

No. 25-40032

*$4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019) (citing *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)). Therefore, we affirm the dismissal of the Liberty County defendants with the modification that their dismissal be without prejudice.

2

There is one additional jurisdictional issue that we must address *sua sponte* as to the Liberty County Defendants, and that issue is one of standing. In a previous case before this circuit, we held that a victim lacked standing to sue a prosecutor who failed to bring charges against her assailant. *See Lefebure v. D'Aquilla*, 15 F.4th 650 (5th Cir. 2021). In that case, the prosecutor allegedly failed to "prosecute *or even investigate* [the alleged perpetrator]." *Id.* at 655. The appellant in *Lefebure* brought forth specific allegations and evidence of wrongdoing by D'Aquilla, the would-be prosecutor in the criminal case against her assailant. The panel in *Lefebure* noted that the victim deserved to have her day in court but that its hands were tied: "Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution." *Id.* at 652.

In the case at bar, the general allegations in the Operative Complaint fail to point our court to any cognizable claims.[10] We therefore conclude that Appellants also lack standing to file suit against the Liberty County

---

[10] Appellants claim that Madelyn was deprived of Crime Victims' Compensation by the Liberty Defendants' failure to prosecute the case. However, according to the Texas Office of Attorney General's website on Eligibility for Crime Victims' Compensation, a claimant need only show that "there is enough evidence to show the crime occurred." There is no requirement that a judgment be rendered in the victim's favor.

No. 25-40032

Defendants.  Because dismissals based on lack of standing must be dismissed without prejudice, we affirm the dismissal as modified, *supra*.

3

While the Operative Complaint mentions that the Liberty County Defendants were sued only in their official capacities, on appeal, Appellants argue that these defendants are "not entitled to prosecutorial immunity [for] claims brought against them in their individual capacities under both state and federal law."  It is therefore not altogether clear whether Appellants intended to sue the Liberty County Defendants in their official capacities, their individual capacities, or both.  Because "courts may not simply rely on the characterization of the parties in the complaint[,]" we will consider claims against the Liberty County Defendants in their individual capacities as well. *Lewis v. Clarke*, 581, U.S. 155, 162 (2014).

As to the Liberty County Defendants being sued in their individual capacities, "[t]he identity of the real party in interest dictates what immunities may be available." *Id*. at 163 (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  "An officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances." *Id*. (citing *Van de Kamp v. Goldstein,* 555 U.S. 335, 342–344 (2009)).  On appeal, Appellants argue that the Liberty County Defendants are being sued, not because of their roles as prosecutors, but rather for their "administrative and police-type acts."  Appellants cite to the Supreme Court's holding in *Van de Kamp* that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation[.]" *Id*. at 343.  But there are no such allegations here.  The Operative Complaint points to various decisions the Liberty County Defendants made in their roles as advocates for the state.  Further, Appellants fail to bring forth any arguments supporting their contention that the Liberty

County Defendants were acting in their administrative role. Rather, Appellants criticize decisions made in handling of the prosecution of the case, which were "intimately associated with the judicial phase of the criminal process" *Id*. (quoting *Imbler v. Pachtman,* 424 U.S. 409, 428, 430 (1976)).

"District attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities." *Quinn*, 326 F. App'x at 292. Therefore, prosecutors are absolutely immune, under prosecutorial immunity, from liability with respect to actions taken by them while representing the government in judicial proceedings. *Imbler* 424 U.S. at 430–31. We therefore conclude that any claims brought against these defendants in their individual capacity are barred by prosecutorial immunity.

E

Appellants also bring negligence and obstruction of justice claims against Union Pacific Railroad, the Ramji Law Group, Adam Ramji, James Wayne Bice, Stephanie Lee Blum Bice, Morgan White, and Eduardo Hernandez. These appellees did not respond to Appellants' Operative Complaint—some responded to previous versions of the Appellants' complaints, and some did not respond at all. Due to the varying nature of these appellees' circumstances, our court will address the claims against each of these appellees below.

1

Appellants name both the Ramji Law Group and Adam Ramji in their Operative Complaint but make no substantive claims against them. Though our court was not briefed on their relationship to the instant suit, it appears as though either Adam Ramji or an attorney in the Ramji Law Group represented one of the Allegiance Defendants. Because no substantive

claims were brought against Ramji or the Ramji law group, the district court dismissed them under Federal Rule of Civil Procedure 12(b)(6). We agree. On appeal, Appellants also fail to flesh out any claims against the Ramji Law Group and Adam Ramji, or even mention them in the body of their arguments. Any claims against them are therefore waived. *See Ratcliff*, 699 F. App'x at 411 (citing *Brinkmann*, 813 F.2d at 748).

### 2

At the district court, Union Pacific Railroad filed a Rule 12(b)(6) motion to dismiss the Appellants' first amended complaint.[11] That motion was denied as moot after Appellants were permitted to amend for a third time. Union Pacific Railroad did not file an answer or motion to dismiss in response to the Operative Complaint. On appeal, Appellants argue only that their state law claims against Union Pacific should be dismissed without prejudice, so that they may have the opportunity to replead. However, neither we nor the district court discerned any state law claims made against Union Pacific. That general claim as to all defendants is discussed, *infra*.

### 3

Morgan White's parents, James Bice and Stephanie Lee Blum Bice, were named in the Operative Complaint for interfering with a criminal investigation, among other related claims. Like Union Pacific, the Bices responded to Appellants' first amended complaint with a Rule 12(b)(6) motion to dismiss, which was later denied as moot by the district court following Appellants' subsequent amendments to their complaint. Like all

---

[11] In their first amended complaint, Appellants alleged the same vague and conclusory § 1983 claims against Union Pacific, mirroring those they brought against the Dayton Defendants, Allegiance Defendants, and Liberty Defendants. The district court additionally held that appellants failed to properly establish Union Pacific was a state actor for purposes of their § 1983 claim.

other claims made by Appellants, the claims against the Bices are vague and difficult to understand. Appellants allege that the Bices "acted in concert . . . to obstruct justice in the investigation of the injured plaintiff and its causes." The district court found no discernable claims against the Bices in the complaint, as amended, and dismissed all charges against them with prejudice. On appeal, Appellants' sole argument is that their claims against the Bices should not have been dismissed with prejudice and that they should have a right to replead to address the deficiencies highlighted by the district court.

## F

Finally, Appellants bring claims against Eduardo Hernandez and Morgan White, the two teenage drivers in the incident. On appeal, Appellants request that we dismiss the claims against Hernandez without prejudice. The district court has already done so.

Turning to Morgan White, astonishingly, Appellants fail to bring forth *any* claims against her in the body of the complaint, as amended, despite their later contention that they had done so. On appeal, Appellants argue that the negligence claims against White were not dismissed by the district court. That is true, in fact, because *Appellants failed to bring any negligence claims against her.* Consequently, there was no error in dismissing the complaint as to Morgan White.

## G

On appeal, in defense of the dismissal of all claims against all defendants, Appellants make one recurring argument: they should be permitted to replead or, alternatively, they ask our court to remand with the instruction to dismiss all claims against all named defendants without prejudice. In a motion for reconsideration that the district court construed as a Rule 59(e) motion to alter judgment, Appellants restated their claims as

to all defendants, arguing that any deficiencies found by the district court could be corrected if Appellants were given the opportunity to replead. The district court disagreed. So do we.

From their original complaint to their now-operative and counseled second corrected amended complaint, the factual support for the claims asserted has been lacking. It is clear that allowing Appellants to replead for the fourth time would be entirely futile. "A proposed amendment is futile if the amended complaint fails to state a claim upon which relief could be granted." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Having already determined that all of Appellants' claims are rooted in futility, we affirm the district court's dismissal of all claims with prejudice, with the exception of those Defendants whose Eleventh Amendment immunity require that dismissal be without prejudice. We therefore also decline Appellants' request to instruct the district court to dismiss all claims against the other defendants without prejudice.

*       *       *

For the foregoing reasons, we AFFIRM the district court's judgment, with the exception of the dismissal of the Liberty County Defendants, whose dismissal we modify to be without prejudice.